# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | CRIMINAL ACTION NO. |
| : | 1:95-CR-0554-JOF |
| JESSE BROWN GRAVES, : | |
| : | |
| Defendant. : | |

## OPINION AND ORDER

The instant matter is before the court on Petitioner Jessie Brown Graves' Pro Se "Motion pursuant to 18 U.S.C. 3664, 3663 to Pay Restitution After Prison Sentence or Waive Restitution Order All Together" [55].

**I.   Background**

On February 9, 1996, Petitioner plead guilty to a Criminal Information that charged that on November 17, 1995, Petitioner used and carried a handgun in relation to a crime of violence. The Criminal Information accused Petitioner of taking money from Wachovia Bank by force, violence, or intimidation in violation of 18 U.S.C. §2113(a). Under the plea, Petitioner and the Government agreed that the maximum custody sentence would be sixty months followed by no more than three years of supervised release.

The court's presentence report ("PSR") outlined Petitioner's history. Petitioner was thirty-one years old at the time of the offense. Petitioner was a product of the foster care system and had been on his own since the age of sixteen. After abusing drugs for more than ten years, Petitioner became addicted to crack cocaine in 1993. According to Petitioner, he graduated from high school in 1982 and attended college between 1983 and 1985. It appears that Petitioner was unemployed between 1985 and 1993 due to periods of incarceration and worked sporadically through temporary services. Petitioner was employed for three months in 1993 as a general laborer making $9.20 per hour but was terminated due to poor attendance. Petitioner claims he was employed in 1994-1995 with a temporary agency. Petitioner reported IRS income from 1991-1993 of between $3,000 and $8,000; Petitioner reported no income in 1990 or 1994. At the time the PSR was prepared, Petitioner had no assets, liabilities, monthly income or expenses. The PSR stated, "[b]ased on the above, it appears the defendant does not have the ability to pay a fine within the guideline range at sentencing." (PSR 11). The PSR calculated restitution to Wachovia Bank to be $8,500. The PSR did not address Petitioner's ability to pay restitution.

On April 17, 1996, Judge Richard C. Freeman sentenced Petitioner to sixty months of imprisonment and thirty-six months of supervised release and recommended that Petitioner be placed in a drug rehabilitation facility. Judge Freeman also ordered $8,500 in restitution and a $50 special assessment. During sentencing, the court discussed Petitioner's

2

substance abuse issues and which facility to recommend, but the court did not engage in any detailed discussion about his financial status or work potential. In awarding restitution the court stated:

> It's further ordered that you make restitution to the Wachovia Bank of Georgia . . . in the amount of $8,500. I don't believe that you have the ability to make restitution and pay a fine in addition, so I will waive the imposition of a fine in this case. It's further ordered that you pay the United States a special assessment of $50 which is required by law, and there is nothing I can do about that.

(Tran. 4/17/96 7:24-8:8). Petitioner's counsel did not contest the amount of restitution during sentencing. Petitioner did not file a direct appeal. Petitioner served time in prison and was ultimately released.

Petitioner was arrested on October 4, 2000, while out on supervised release and was charged with bank robbery. Petitioner's original case was reassigned to the undersigned, and on October 30, 2000, the Government moved to have Petitioner's supervised release revoked. Judge Julie Carnes sentenced Petitioner on the October bank robbery offense. This court revoked Petitioner's supervised release on February 26, 2002, and ultimately entered a judgment and commitment sentencing Petitioner to an additional two years to run consecutive to the bank robbery sentence. During 2002, Petitioner filed a post-conviction motion to vacate his original sixty-month sentence which this court denied. Petitioner's motion did not address restitution. Petitioner attempted to appeal and this court denied him a certificate of appealability and refused his request to proceed in forma pauperis.

3

Petitioner filed the instant motion on April 24, 2008, more than twelve years after pleading guilty to the underlying offense. Petitioner contends that the sentencing court erred under 18 U.S.C. §§ 3663-64 when it imposed restitution without properly considering Petitioner's ability to pay. This motion is Petitioner's first attempt in twelve years to challenge the amount and payment schedule of his restitution.

**II.     Discussion**

The issue of restitution in this matter is governed by the Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291, 96 Stat. 1248. Under the VWPA, the district court is required to consider, among other factors, a defendant's ability to pay in fixing the amount of restitution to be made by that defendant. *See United States v. Siegel*, 153 F.3d 1256, 1258 (11th Cir. 1998) (citing 18 U.S.C.A. § 3663A(a)(1) (West Supp. 1998)).[1] A defendant's indigency at the time of sentencing is not an automatic bar to an order of restitution if the defendant has a future ability to pay. *United States v. Remillong*, 55 F.3d 572, 574 (11th Cir. 1995). A defendant has the burden of persuading the court by

---

[1] The provisions for restitution set out in the VWPA were substantially amended by the Mandatory Victims Restitution Act of 1996 ("MVRA"), Pub. L. No. 104-132, 110 Stat. 1214, 1229-1236, which became effective on April 24, 1996. Under the MVRA restitution is no longer discretionary, and a district court must order restitution in the full amount of each victim's loss regardless of defendant's economic circumstances. *See* 18 U.S.C.A. § 3664(f)(1)(A) (West Supp. 1998). However, the MVRA cannot be applied to a person whose criminal conduct occurred prior to April 24, 1996. *Siegel*, 153 F.3d at 1260. The conduct underlying the court's order of restitution in this matter occurred in November of 1995; therefore, Petitioner's motion must be evaluated under the VWPA.

4

a preponderance of the evidence that he does not have access to the fruits of his crime and does not have the ability to pay restitution in the full amount of the victim's losses. *Siegel*, F.3d at 1261-62. If the undisputed evidence in the PSR regarding a defendant's liabilities, assets, current income, and future earning capacity demonstrates that the defendant does not have the ability to pay, the Government must produce evidence that the facts set forth in the PSR are not credible. *Id.* at 1262.

In *Siegel*, the defendant pled guilty to fraud and money laundering and was ordered to pay $1.2 million in restitution. *Id.* at 1258. The PSR showed that "Siegel's liabilities were greater than his assets, his current income was minimal, and his future earning capacity was limited by the fact that he suffer[ed] from a congenital spinal defect." *Id.* at 1262. Specifically, the PSR found that Siegel had no assets; he had debts of $7,500; his income varied between $400-$1000 a month; and his expenses totaled $250 a month. *Id.* at 1264. The PSR stated that Siegel would not be able to pay a fine. *Id.* The Government presented no evidence that Siegel could pay restitution during the statutory period. *Id.* At sentencing, the district court made no findings concerning Siegel's financial ability to pay restitution in any amount. The court did state, "[t]he Court finds that the Defendant is not able to pay a fine and also make restitution in this case; therefore no fine will be imposed in this case. The Court will order the Defendant, however, to make restitution to the victims of these crimes." *Id.* The Eleventh Circuit found that the undisputed evidence in the PSR "was

sufficient to demonstrate that Siegel no longer had access to the fruits of his crime at the time of sentencing, and satisfied his burden of persuading the court that he did not have the financial ability or future earning capacity to pay the full amount of the loss to the victims." *Id.* The court found if Siegel made payments of $750 a month, or the equivalent of his income minus expenses, he would have to pay for more than 130 years to comply with the court's orders. *Id.* The Eleventh Circuit vacated the district court's order for full restitution and remanded for the district court to consider Siegel's financial resources, needs, and earning ability.

The Eleventh Circuit reached a similar conclusion in *United States v. Remillong*, 55 F.3d 572 (11th Cir. 1995). There, the defendant appealed the district court's order requiring him to pay $29,251.00 in restitution for robbing ten banks. The defendant testified that he had no financial ability to pay, no cash flow, and no money in the bank and that he had committed bank robbery because of economic problems. *Remillong*, 55 F.3d at 575-76. The defendant's PSR indicated assets of $1000, liabilities of $3000, a high school education and sporadic minimum wage work and concluded that he did not have the ability to pay a fine. *Id.* The Government presented no evidence showing Remillong's future ability to pay restitution. *Id.* The Eleventh Circuit reversed the district court's restitution award and remanded. *See also United States v. Fox*, 140 F.3d 1384, 1385 (11th Cir. 1998) (reversing order for restitution in a bank robbery case where the PSR indicated that the defendant had

6

not finished high school, had only a limited ability to make a living, had spent eleven years in prison, had no significant assets, and concluded he was unable to pay a fine); *but see United States v. Davis*, 117 F.3d 459, 463-64 (11th Cir. 1997) (upholding restitution order requiring defendants to pay restitution for conspiring to commit Medicare fraud under plain error standard); *United States v. Twitty*, 107 F.3d 1482, 1493 n.13 (11th Cir. 1997) (upholding restitution order requiring three defendants to pay more than $11 million each in restitution for bank fraud where the PSRs indicated that they were educated, experienced in business or the practice of law and had a high likelihood of future employment).

Here, like in *Siegel*, *Remillong*, and *Fox*, the PSR indicates that Petitioner has no assets, a scant history of earning income, and is unable to pay a fine. The Government offered no evidence to show that the facts in the PSR were not credible, and neither the PSR nor the court made any detailed findings about Petitioner's ability to pay restitution. The only comment by the court during sentencing indicating that it considered Petitioner's ability to pay was Judge Freeman's statement that he did not believe that Petitioner had the ability to make restitution and pay a fine in addition, so he would waive the imposition of a fine. Judge Freeman's language closely mirrored that of the trial judge in *Siegel*, and the Eleventh Circuit found such language to be insufficient. Therefore, a court could find that Petitioner has met his burden of showing that the trial court did not properly consider his financial circumstances before awarding restitution.

7

This court need not make such a finding, however, because Petitioner cannot raise his claim at this time. Petitioner has styled his motion as a Motion Pursuant to 18 U.S.C. §§ 3663, 3664 to Pay Restitution After Prison Sentence or Waive Restitution Order All Together. Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys, and courts have an obligation to look behind the label of a motion filed by a pro se inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework. *See Andrews v. United States*, 373 U.S. 334, 387 (1963) (court should look beyond title of motion); *Tannenbaum v. United States*, 148 F.3d 1263, 1263 (11th Cir. 1998) (holding that pro se pleadings should be construed liberally). In that vein, the court sought to construe Petitioner's motion in such a way as to entitle him to relief; however, the court was unable to do so. As titled, Petitioner's motion could be construed as either a motion to revoke his sentence of restitution or a motion to modify the timetable in which he needs to complete it.

The case law indicates that a court may revoke a restitution sentence (1) on direct appeal, *Siegel*, 153 F.3d at 1256; (2) via a petition for habeas relief under 28 U.S.C. § 2255, *see United States v. Benveniste*, No. 1:01-CR-0761, 2006 U.S. Dist. LEXIS 6629 (N.D. Ga. Jan. 31, 2006) (Forrester, J.) (using habeas petition to challenge incarceration and restitution); *but see Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998) (holding that 2255 cannot be used to challenge restitution alone); (3) via Fed. R. Crim. P. 35, *see*

8

*United States v. Siegelman*, No. 2:05-CR-119-MEF, 2007 U.S. Dist. LEXIS 49262 (M.D. Ala. July 9, 2007) (addressing Rule 35 motion to revoke restitution award); or (4) through a writ of error *coram nobis*, *see Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (noting that this procedure can be used in lieu of habeas petition). Petitioner did not file a direct appeal in this matter and is now time barred from doing so. Fed. R. App. P. 4(b) (stating defendant has ten days to file direct appeal). Petitioner may not challenge restitution alone, without also challenging his incarceration, using a habeas petition. *Blaik*, 161 F.3d at 1343. The seven-day period has long passed for Petitioner to file a motion to correct his sentence under Fed. R. Crim. P. 35.[2] Lastly, Petitioner may not file a writ of error *coram nobis* because he has not shown that such an extraordinary remedy is warranted nor a sound reason for his failure to seek relief on this issue earlier. *See Sun v. United States*, 151 Fed. Appx. 860, 862-863 (11th Cir. 2005) (describing a petitioner's burden on a writ of error *coram nobis*).

To the extent that Petitioner requests that the court modify the timetable of his restitution order and allow Petitioner to pay restitution after he leaves prison, the court might construe Petitioner's motion as a motion to adjust payment schedule under 18 U.S.C.S. § 3664(k) or some alternate motion to modify. Section 3664 allows a defendant to notify

---

[2]The seven-day limitation presently in Fed. R. Civ. P. 35(a) has been in place since October 12, 1984. At that time Congress passed P.L. 99-217, § 4, 99 Stat. 1728, which substituted the current language for language stating, "the court may correct an illegal sentence at any time."

9

the court and the Attorney General of any material change in his economic circumstances that might affect his ability to pay restitution. Petitioner has offered no explanation for a material change in his circumstances or any reason why he has not contested his restitution over the last twelve years. Therefore, the court cannot construe Petitioner's pleading as a motion to modify.

**III.　Conclusion**

The court finds no procedural posture under which Petitioner can successfully bring his claim. Petitioner's Motion is DENIED.

**IT IS SO ORDERED** this 30th day of October 2008.

s/ J. Owen Forrester  
J. OWEN FORRESTER  
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)